**Charles Coles DIGGS, Jr., et al., Appellants,**

v.

**Elliot L. RICHARDSON.**

**No. 75–1775.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1976.

Decided Dec. 17, 1976.

Leonard C. Meeker, Washington, D. C., with whom Richard A. Frank, Eldon V. C. Greenberg, Michael Peay and Goler Teal Butcher, Washington, D. C., were on the brief for appellants.

Bruno A. Ristau, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty. and Leonard Schaitman, Atty. Dept. of Justice, Washington, D. C., were on the brief for appellee, Richardson.

Stephen S. Boynton and Robert McK Maloney, Washington, D. C., were on the brief for appellee, The Fouke Co., James P. Davenport, Michael Nussbaum and Ronald G. Precup, Washington, D. C., also entered appearances for appellee, The Fouke Co.

Frank C. Newman, Washington, D. C., filed a brief on behalf of the International League for the Rights of Man.

Before TAMM, LEVENTHAL and ROBB, Circuit Judges.

Opinion of the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

This suit seeks judicial enforcement of a U.N. Security Council resolution which calls upon member states to have no dealings with South Africa which impliedly recognize the legality of that country's occupation of the former U.N. territory of Namibia. The plaintiffs, among whom are American citizens who have been denied admission to Namibia,[1] seek declaratory and injunctive relief prohibiting our government from continuing to deal with the South Africans concerning the importation of seal furs from Namibia. We hold this case to be nonjusticiable.

United Nations Security Council Resolution 301,[2] for which the United States voted, declares South Africa's continued presence in Namibia a breach of international obligations and

". . . calls upon all states . . .

(d) to abstain from sending diplomatic or special missions to South Africa that include the Territory of Namibia in their jurisdiction;

. . . . .

(f) to abstain from entering into economic and other forms of relationship or dealings with South Africa on behalf of or concerning Namibia which may entrench its authority over the Territory . . . .

Plaintiffs contend that this resolution states a binding international obligation of the United States[3] and further contend that the Resolution is self-executing—that, without further legislative or executive action, it has become a part of our judicially enforceable domestic law.

Plaintiffs then call the Court's attention to several visits to South Africa in 1973–74 by officials of the U. S. Department of Commerce, who met with South African officials and individuals and discussed the

---

1. Other plaintiffs include a Namibian refugee allegedly subject to arrest upon return and the South West Africa People's Organization (SWAPO), which seeks to promote the independence of Namibia.

2. 26 U.N. SCOR, 1598th meeting 7 (1971). Security Council Resolution 301 reaffirmed earlier U.N. Security Council Resolutions calling on member states to refrain from dealings with South Africa which were inconsistent with the declared illegality of the South African occupation of Namibia. See Security Council Resolution 283, 25 U.N. SCOR, 1550th meeting 1 (1970); Security Council Resolution 276, 25 U.N. SCOR, 1529th meeting 1 (1970). Resolution 301 also endorsed the advisory opinion of the International Court of Justice, which held that member states were under an obligation to refrain from dealings with South Africa which impliedly recognized the legality of or lent support to the South African occupation of Namibia. Advisory Opinion on the Legal Consequences for States of the Continued Presence of South Africa in Namibia [1971] I.C.J. 16.

3. Plaintiffs have adduced correspondence between officials of the State Department and Department of Commerce in which the State Department officials repeatedly state that the United States accepts U.N. Resolution 301 as a correct statement of our obligations under international law.

harvesting of seal furs in Namibia. The purpose of these visits and related correspondence was to gather information which would allow the Department of Commerce to decide whether to grant to an American company a waiver of the Marine Mammal Protection Act of 1972, which otherwise prohibits the importation of seal furs.[4] Plaintiffs contend that these contacts were in violation of the U.N. resolution quoted above[5] and ask that the district court enjoin any further contacts of this type and any government approval of fur importation from Namibia.[6]

Various objections to the maintenance of this action are pressed by the Government. Prominent among them is a contention that the plaintiffs lack standing. Government counsel argue that *Diggs v. Shultz*, 152 U.S.App.D.C. 313, 470 F.2d 461 (1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973), a decision of this Circuit that recognized standing in similar circumstances,[7] was wrongly decided, and that *Diggs'* approach has been undercut by subsequent Supreme Court decisions.[8] The Government also argues that this case raises a political question not appropriate for judicial resolution. And the Government concedes nothing on the merits: it contends that Security Council Resolutions are not legally binding on U.N. members and that, in any event, the Resolution involved in this case is not self-executing.

■ The district court dismissed the suit. It suffices for us to affirm on the ground, related to the issue of standing, but analytically distinct, that even assuming there is an international obligation that is binding on the United States—a point we do not in any way reach on the merits[9]—the U.N. resolution underlying that obligation does not confer rights on the citizens of the United States that are enforceable in court in the absence of implementing legislation.

---

4. 16 U.S.C. § 1371 (1975 Supp.). The Secretary of Commerce is authorized to waive the requirements of the Act in particular cases after gathering appropriate scientific information and after obtaining assurances that the "taking" of the marine mammal is in accord with sound principles of resource protection. 16 U.S.C. § 1371(a)(3)(A). In 1973 the Fouke Company, an American seal fur processor, applied for such a waiver to import furs from South Africa. The Fouke Company has intervened in this action as a party defendant.

5. Plaintiffs cite a letter dated August 2, 1974 from Deputy Secretary of State Robert S. Ingersoll to Secretary of Commerce Frederick B. Dent, in which Ingersoll stated:

> We do not believe that an official visit to Namibia by Commerce Department employees or contract personnel, and a possible determination by you regarding South Africa's management of Namibian marine mammal resources can be brought into conformity with the . . . obligations [set forth in Security Council Resolution 301].

Similarly, a subsequent letter from then Acting Secretary Ingersoll to Secretary of Commerce Rogers B. Morton stated:

> We believe that US Government approval of an application to import Namibian fur seal skins from South Africa would be contrary to our international legal obligations in that it would necessarily recognize the validity of South African management of Namibian mammal resources.

6. In 1974 the Fouke Company applied for a waiver of the Act to cover furs harvested in South Africa in 1975 and, subsequent to the order of the district court, Commerce Department officials made additional visits to South Africa to deal with this problem.

7. In *Diggs*, plaintiffs who had been denied admission to Rhodesia sued to enforce executive orders implementing an economic embargo declared by the U.N. Security Council. Although this Court recognized plaintiffs' standing to sue, it denied relief on the ground that a subsequent Act of Congress had abrogated whatever obligation may have existed.

8. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Wrath v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

9. In holding that the U.N. Security Council Resolution involved here is not self-executing, we avoid the larger questions raised by this case: under what circumstances a Security Council resolution can create a binding international obligation of the United States; whether Article 25 of the U.N. Charter, in which the member nations agree to carry out the resolutions of the Council, can ever give rise to a self-executing resolution; and so on.

There is sound decisional basis for this conclusion. In *The Head Money Cases,* 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed.2d 798 (1884), Justice Miller outlined the relationship of our treaty obligations to our domestic law:

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it . . . . But a treaty may also contain provisions which confer certain rights upon the citizens or subjects of one of the nations residing in the territorial limits of the other, which partake of the nature of municipal law, and which are capable of enforcement as between private parties in the courts of the country . . . . A treaty, then, is a law of the land as an act of Congress is, whenever its provisions prescribe a rule by which the rights of the private citizen or subject may be determined.

112 U.S. at 598–99, 5 S.Ct. at 254. Whether an international agreement of the United States is self-executing is a matter of interpretation to be determined by the courts. Restatement (Second) of Foreign Relations § 154 (1965).

In determining whether a treaty is self-executing courts look to the intent of the signatory parties as manifested by the language of the instrument, and, if the instrument is uncertain, recourse must be had to the circumstances surrounding its execution. *Sei Fujii v. State,* 38 Cal.2d 718, 721–22, 242 P.2d 617, 620 (1952) and cases cited therein. See also *People of Saipan v. United States Dep't of Interior,* 502 F.2d 90, 101 (9th Cir. 1974) (Trask, J., concurring) (emphasizing absence of language "which confers rights or obligations on the citizenry of the compacting nations").

Applying this kind of analysis to the particular Security Council Resolution on which plaintiffs rely, we find that the provisions here in issue were not addressed to the judicial branch of our government.[10] They do not by their terms confer rights upon individual citizens; they call upon governments to take certain action. The provisions deal with the conduct of our foreign relations, an area traditionally left to executive discretion. *See, e. g., C & S Air Lines v. Waterman Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948). The Resolution does not provide specific standards. The "entrenchment" standard of the Resolution, while possibly of such a nature that it might be elaborated by an international tribunal, is essentially the kind of standard that is rooted in diplomacy and its incidents, rather than in conventional adjudication, and is foreign to the general experience and function of American courts. In the absence of contrary indication in the international legislative history, and in the absence of domestic legislation evincing an intention for judicial enforcement,[11] we conclude that the provisions of Resolution 301 involved here do not confer on individual citizens rights that are judicially enforceable in American domestic courts.

*Affirmed.*

10. We made no decision with respect those provisions of U.N. Security Council Resolution 301 which are not involved here. *See, e. g.,* ¶ 12 (declaring that "franchises, rights, titles or contracts relating to Namibia granted to individuals or companies by South Africa after the adoption of General Assembly resolution 2145 (XXI) are not subject to protection or espousal by their States against claims of a future lawful Government of Namibia").

11. Moreover, we do not have here a case where the executive urges that the treaty is self-executing. The State Department has not taken a stand on that issue before this court or in its communications with the parties that are contained in the record.