CANADIAN TRANSPORT COMPANY
and Bocimar, N.V., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 76–636.

United States District Court,
District of Columbia,
Civil Division.

April 26, 1977.

Carroll E. Dubuc, Washington, D. C., for plaintiff.

David V. Hutchinson, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is a proceeding in which the plaintiffs seek damages for alleged losses in-

curred when the United States temporarily excluded a vessel from the port of Norfolk, Virginia. The matters now before the Court are the parties' cross motions for summary judgment. The following are undisputed facts.

The vessel TROPWAVE was owned by a Swiss corporation, chartered by the plaintiff Canadian Transport Company, a Canadian corporation, and subchartered by the plaintiff Bocimar, N.V., a Belgian corporation. Its master and officers were Polish nationals. Its crew was composed of nationals of countries other than Poland. It was registered in and flew the flag of Singapore.

On or about April 9, 1974, Bocimar subchartered the TROPWAVE to Altos Hornos De Vizcaya, S.A., coal receivers in Spain. The charter party for that transaction provided that the TROPWAVE would load coal at Hampton Roads (Norfolk). The TROPWAVE departed Rotterdam for Norfolk on April 12, 1974. On or about April 19, 1974, the United States Coast Guard denied permission for the TROPWAVE to enter the port of Norfolk. The denial was made pursuant to the Special Interest Vessel program because the master and officers of the TROPWAVE were Polish nationals. The Special Interest Vessel program is a national security program affecting the national defense of the United States. At the time of the incidents related here, its details were classified; there were no published criteria that would have enabled the owners or charterers of the TROPWAVE to determine that the vessel would be denied entry to Norfolk.[1] Upon being denied entry to Norfolk, the TROPWAVE proceeded to Baltimore, where it replaced the Polish master and officers with officials under whom it would be permitted to enter the port of Norfolk. It then sailed for Norfolk, where it loaded coal, and then sailed back to Baltimore, where it dropped off the substitute officers and picked up the Polish officers, before sailing for Spain.

1. The actual time when the parties received notice of the restriction is disputed, although it is undisputed that plaintiffs herein had no notice prior to the TROPWAVE's departure from Rotterdam.

Plaintiffs ask for money damages to cover the expenses incurred in the Baltimore detours.

### I. *Plaintiffs' First Claim.*

The plaintiffs allege that they bring their first cause of action under the Suits in Admiralty Act, 46 U.S.C. §§ 741–52. It is not clear what cause of action the plaintiffs are asserting. In their complaint and memorandum supporting their motion for summary judgment, plaintiffs assert they are entitled to monetary relief for the "arbitrary and capricious" actions of the defendant, including its violation of the Federal Register Act, 44 U.S.C. §§ 1501–11, leading the Court to believe this is a claim for judicial review of federal agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701–06. In their opposition to defendant's motion for summary judgment, however, plaintiffs characterize their first claim as one for tortious interference with contract rights, which is entirely separate and distinct from the claim for judicial review of federal agency action.

■ If this is a claim, as alleged in the complaint, for judicial review of federal agency action, it does not state a cause of action upon which monetary relief can be granted.[2] The statute defining the scope of our review, 5 U.S.C. § 706, contains specific remedies for unlawful agency action. It provides that the reviewing court may compel or set aside agency action. Both are equitable remedies. It makes no mention of monetary relief. Because of the statutory scheme envisioning equitable relief only, we follow the lead of the United States District Court for the Eastern District of Washington and hold that monetary relief is not available for unlawful agency action challenged under these circumstances under the Administrative Procedure Act. *Armstrong & Armstrong, Inc. v. United States,* 356 F.Supp. 514, 521 (E.D.Wash.1973), *aff'd,* 514 F.2d 402 (9th Cir. 1975).

■ On the other hand, if this is a claim for tortious interference with contract rights, it cannot be maintained under the Federal Tort Claims Act for several reasons, including the reason that the Tort Claims Act does not waive sovereign immunity for claims of interference with contract rights. 28 U.S.C. § 2680(h). Assuming this limitation is not to be read into the Suits in Admiralty Act, *see De Bardeleben Marine Corp. v. United States,* 451 F.2d 140, 145–47 (5th Cir. 1971), if plaintiffs are to have a cause of action upon which relief can be granted, it must be maintainable under the Suits in Admiralty Act.

■ We think plaintiffs' claim is within our admiralty jurisdiction and properly asserted under the Suits in Admiralty Act. *See United States v. United Continental Tuna Corp.,* 425 U.S. 164, 176 n.14, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976); *Carroll v. Protection Maritime Ins. Co.,* 512 F.2d 4 (1st Cir. 1975); *In re Motor Ship Pacific Carrier,* 489 F.2d 152 (5th Cir.), *cert. denied,* 417 U.S. 931, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974). It does not necessarily follow, however, that the United States has waived sovereign immunity for this kind of admiralty claim. The Suits in Admiralty Act only waives sovereign immunity in "cases where . . . if a private person or property were involved" a proceeding could be maintained. 46 U.S.C. § 742. This provision was inserted in the statute in 1960. Act of Sept. 13, 1960, Pub.L.No.86–770, § 3, 74 Stat. 912. The legislative history is not particularly illuminating of its meaning. *See* S.Rep.No.1894, 86th Cong., 2d Sess. 5, 11 (1960), U.S.Code Cong. & Admin.News 1960, p. 3583. The cases construing it are few and far between. *E.g., Universe Tankships, Inc. v. United States,* 388 F.Supp. 276, 285 (E.D.Pa.1974), *aff'd,* 528 F.2d 73 (3d Cir. 1975). *See also United States v. United Continental Tuna Corp.,* 425 U.S. 164, 176 & n.14, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976). There is, however, an analogous provision in the Federal Tort Claims Act, 28 U.S.C. § 2674. The Court will therefore look to

---

**2.** This discussion assumes the action complained of is reviewable because it is not committed to agency discretion by law, an assumption whose validity is not indisputable.

the decisional law under that analogous provision, for it believes the two provisions should be construed *in pari materia*.

■ The decisions under 28 U.S.C. § 2674 of the Federal Tort Claims Act indicate that the Federal Government has only consented to be sued in cases *where there is a parallel private liability*. If there is no analogous private activity that would give rise to liability, there is no waiver of sovereign immunity. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). We think these same principles are applicable to proceedings under the Suits in Admiralty Act. *See Universe Tankships, Inc. v. United States,* 388 F.Supp. 276, 285 (E.D.Pa. 1974), *aff'd,* 528 F.2d 73 (3d Cir. 1975).

■ In this context, it is important to remember that we are talking only about governmental activity on the "operational level." Governmental activity on the nonoperational or "planning" level is discretionary and is not a subject covered by a waiver of sovereign immunity under either the Federal Tort Claims Act or under the Suits in Admiralty Act. *Gercey v. United States,* 540 F.2d 536, 539 (1st Cir. 1976).

We think there is some question as to whether the actions complained of here were the result of decisions made on the operational level or on the nonoperational or "planning" level. We do not, however, find it necessary to reach that question. If the actions complained of resulted from decisions made on the planning level, plaintiffs' claim is barred under the doctrine of sovereign immunity by the exception for discretionary activity. *Gercey, supra.*

Likewise, we think sovereign immunity bars plaintiffs' claim if the actions complained of resulted from decisions made on the operational level. In *Indian Towing Co. v. United States,* 350 U.S. 61, 68, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the Supreme Court wrote that "it is hard to think of any governmental activity on the 'operational level,' our present concern, which is 'uniquely governmental,'" in the sense that it could not be conducted by private parties who would be held liable in tort for their con-

duct. Nevertheless, we believe the actions complained of here, if they do indeed constitute activity on the operational level, fall within the narrow spectrum of *uniquely governmental activity* for which the Government has not consented to be sued. These actions were taken in direct furtherance of the Government's sovereign rights to completely exclude foreign vessels from its territory, *see United States v. Louisiana,* 394 U.S. 11, 22, 84 S.Ct. 773, 22 L.Ed.2d 44 (1969) (Louisiana Boundary Case), and to protect its security. It is simply inconceivable that a private party would ever be in a position to perform these functions or that the Government would ever delegate these functions to a private party. *Cf. Feres v. United States,* 340 U.S. 135, 141–42, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (military conscription is uniquely governmental). As such, the activity complained of here is uniquely governmental and the Government has not consented to be sued for it.

In summary, we conclude that if the activity complained of is nonoperational, the exception for discretionary action bars plaintiffs' claim. If the activity is operational, the exception for uniquely governmental action bars the claim. Any allegation of tortious conduct must therefore be dismissed for failure to state a claim upon which relief may be granted.

## II. *The Claim for Violation of a Treaty.*

As their second cause of action, the plaintiffs invoke the Court's jurisdiction under 28 U.S.C. § 1350 and seek damages for the United States' alleged violation of the Convention on Facilitation of International Maritime Traffic, *opened for signature* Apr. 9, 1965, [1967] 18 U.S.T. 411, T.I.A.S. No. 6251, 591 U.N.T.S. 265 (entered into force for U.S. May 16, 1967). Assuming plaintiffs' second cause of action sounds in tort and is therefore within our section 1350 jurisdiction, the Court has concluded that it fails to state a claim upon which relief may be granted.

■ In the *Head Money Cases, Edye v. Robertson,* 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884), the Supreme Court stated:

A treaty is primarily a compact between independent Nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war. It is obvious that with all this, the judicial courts have nothing to do and can give no redress. *Id.* at 598, 5 S.Ct. at 254; *see Z. & F. Assets Realization Corp. v. Hull,* 72 App.D.C. 234, 114 F.2d 464, 470 (D.C.Cir. 1940), *aff'd on other grounds,* 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288 (1941). The Court went on to indicate that a treaty may contain provisions conferring rights on subjects of the contracting parties which are of a nature to be enforced for the benefit of private parties in the courts and that such provisions will be recognized and enforced by the courts. 112 U.S. at 598–99, 5 S.Ct. 247. *See also* 87 C.J.S. *Treaties* § 25 (1954) and cases cited therein. Absent this kind of provision, however,[3] the courts can give no redress to a person who is injured by a failure of a government to observe the terms of a treaty; such is a political question and one claiming injury must look to his government for relief. *See Aris Gloves, Inc. v. United States,* 420 F.2d 1386, 190 Ct.Cl. 367 (1970).

■■■ In other words, a federal court has no inherent power to set itself up as the instrumentality for enforcing the provisions of a treaty with a foreign nation if the Government of the United States, as a sovereign power, chooses to disregard it. *Bottiller v. Dominguez,* 130 U.S. 238, 247, 9 S.Ct. 525, 32 L.Ed. 926 (1889). This is a political question for which there is a textually demonstrable constitutional commitment to the Executive and Legislative branches. *See Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Clark v. Allen,* 331 U.S. 503, 514, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947) (whether a state is in a position to perform treaty obligations is essentially a political question). Hence, plaintiffs' second cause of action must be dismissed for failure to state a claim upon which relief may be granted.

### III. *The Fifth Amendment Claim.*

■■■ As their third cause of action, the plaintiffs seek damages for violation of their fifth amendment rights. It is not clear whether the plaintiffs are alleging violation of their rights under the due process clause of that amendment or under the just compensation clause, or both. It is also not certain, as a threshold question, that the plaintiffs are entitled to the protections of the fifth amendment.[4] The Court, without finding it necessary to decide this preliminary issue, finds that plaintiffs have no cause of action under the due process clause and that the defendant is entitled to summary judgment on any claim under the just compensation clause.

In *Duarte v. United States,* 532 F.2d 850, 852 (2d Cir. 1976), the United States Court of Appeals for the Second Circuit held that there can be no cause of action for money damages for violation of fifth amendment due process rights because there has been

---

**3.** There are no such provisions in the treaty at issue here.

**4.** The due process guaranty of the fifth amendment is applicable to aliens within the territory of the United States, *Johnson v. Eisentrager,* 339 U.S. 763, 771, 70 S.Ct. 936, 94 L.Ed. 1255 (1950), and to corporations, *Sinking Fund Cases,* 99 U.S. 700, 719, 25 L.Ed. 496 (1879). The just compensation clause applies to foreign corporations that are alien friends. *Russian Volunteer Fleet v. United States,* 282 U.S. 481, 491, 51 S.Ct. 229, 75 L.Ed. 473 (1931). Due process, however, is not applicable to enemy aliens outside United States territory, *In re Ya-*

*mashita,* 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499 (1946), and is satisfied by the decision of an administrative officer, acting within powers expressly conferred by Congress, with regard to entry of a nonresident alien, *United States v. Ju Toy,* 198 U.S. 253, 263, 25 S.Ct. 644, 49 L.Ed. 1040 (1905). The law is not clear, however, with respect to the applicability of the due process and just compensation clauses in the instant case, where plaintiffs are corporations chartered by alien friends with authorized agents in the United States seeking entry of personal property and alien Communist-bloc agents into the territory of the United States.

no waiver of sovereign immunity for such actions. In the absence of any other pertinent authority, we adopt the reasoning of *Duarte* and hold that plaintiffs here are barred by sovereign immunity from prosecuting their due process claim for damages.

The fifth amendment also specifies that private property shall not be taken for public use without just compensation. In order for this clause to become operative, there must be a "taking" of property by the government. "[W]hether there is a 'taking' must be determined in light of the particular facts and circumstances involved." *United States v. Pewee Coal Co.*, 341 U.S. 114, 117 n. 4, 71 S.Ct. 670, 672, 95 L.Ed. 909 (1951). Generally, however, "[p]roperty is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time." *United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). In light of the facts and circumstances of the case at bar, there being no material facts in dispute, we hold that there was no "taking" of plaintiffs' property in the constitutional sense, and that the Government is entitled to summary judgment on this claim as a matter of law.

In summary, plaintiffs are in the wrong forum. If they are to obtain redress, they should address their claims to the political departments of the Government.

An Order consistent with this Memorandum Opinion has been entered today.