HANOCH TEL–OREN, etc., et al., Plaintiffs,

v.

LIBYAN ARAB REPUBLIC, et al., Defendants.

HANOCH TEL–OREN, et al., Plaintiffs,

v.

LIBYAN ARAB REPUBLIC, Defendant.

Civ. A. Nos. 81–0563, 81–0564.

United States District Court, District of Columbia.

June 30, 1981.

---

Michael S. Marcus, Oren R. Lewis, Jr., William E. Donnelly, Lewis, Wilson, Lewis & Jones, Alexandria, Va., Joseph Livne, Haifa, Israel, for plaintiffs.

Cherif Sedky, Lawrence Coe Lanpher, Karla J. Letsche, Hill, Christopher & Phillips, Washington, D. C., for Nat. Assn. of Arab Americans.

Linda Huber, Michael E. Tigar and Amanda G. Birrell, Tigar, Buffone & Doyle, Washington, D. C., for Palestine Congress of North America.

Michael Kennedy, New York City, for Palestine Information Office.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

These two actions allege multiple tortious acts as the result of the March 11, 1978 attack on a bus containing numerous citizens of and visitors to Israel, that occurred on a main highway between Haifa and Tel Aviv, Israel. The matter was widely reported in the international press. The complaints charge the various defendants with torts in violation of both international law and criminal statutes of the United States of America, and seek compensatory and punitive damages.

Plaintiffs in Civil Action No. 81–0563 are the personal representatives of twenty-nine persons who died in the carnage, and in Civil Action No. 81–0564 are the individuals injured. Defendants are the Libyan Arab Republic ("Libya"), the Palestine Liberation Organization ("PLO"), the Palestine Information Office ("PIO"), the National Association of Arab Americans ("NAAA"), and

the Palestine Congress of North America ("PCNA").[1]

Pending before the Court are the motions of the PCNA and the PIO for summary judgment, and the motion of the NAAA to dismiss the actions for lack of subject matter jurisdiction and because they are barred by the statute of limitations.

Plaintiffs allege four separate bases of jurisdiction: 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1350 (the statute providing for jurisdiction of actions brought by an alien alleging a tort in violation of the laws of the United States or the law of nations), and the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1330, §§ 1602–1611.

For a cause of action to satisfy the requisite elements of federal question jurisdiction, it must state a cause of action arising under the Constitution, laws, or treaties of the United States. The NAAA, in its motions to dismiss, argues that these actions do not emanate under the laws or treaties of the United States because there is no cause of action expressly provided by or implied in the criminal statutes cited by plaintiffs, because there is no nexus between plaintiffs' causes of action and federal law, and because no treaty cited by plaintiffs gives them an express private cause of action. Plaintiffs maintain that the acts complained of clearly violate the law of nations, which has been held to be part of the federal common law, and that the treaties allegedly violated by defendants permit them to bring private actions to vindicate their rights.

■ Critically, a complaint requires the application of some aspect of federal law to survive a jurisdictional assault under § 1331. *See Gomez v. Wilson*, 477 F.2d 411, 420 (D.C.Cir.1973); *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.*, 391 F.2d 486, 493 (2d Cir. 1968). Plaintiffs contend that they assert causes of action that require the application of both federal criminal statutes and the federal common law including the law of nations.

■ In an argument beyond dispute the NAAA maintains, and plaintiffs do not disagree, that none of the several criminal statutes cited in the complaint specifically provides plaintiffs a private right of action. Whether a statute creates an implied private right of action depends on whether the plaintiff is a member of a class for whose special benefit the federal statute was enacted, whether there is any evidence of legislative intent to create or deny a private right of action, whether the underlying purposes of the statutory scheme are consistent with implying a remedy for the plaintiff, and whether the cause of action is one traditionally considered under state law. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

■ 18 U.S.C. §§ 956, 960 are aimed at conspiracies to injure foreign governments and any activity that occurs in the United States in preparation for an expedition against a nation friendly to our own. In no way do these statutes include individuals such as the plaintiffs within their umbrella of relief. 18 U.S.C. § 957 offers protection to the United States, because it punishes activity, with the aid of any foreign government, aimed at violations of American law. Moreover, the piracy statutes, found at 18 U.S.C. §§ 1651–1661, focus on activity on the high seas and in connection therewith. Not one of these statutes offers protection to plaintiffs as a member of a particular class, and there is no indication that Congress intended that they be anything but criminal statutes.

Abandoning their position that federal criminal law gives them a right of action, plaintiffs then resort to the claim that numerous treaties and international conventions, to which the United States is a party, offer them a basis for federal jurisdiction. Plaintiffs' complaints refer the Court to the Geneva Convention for the Protection of Civilian Persons in Time of War (August

---

1. Although service has not been completed on Libya or the PLO and notwithstanding the absence of two of the five defendants, the Court ordered the parties to file motions as to the jurisdictional question on an expedited basis.

For purposes of the instant motion, the two actions will be consolidated because of the presence of common questions of law and fact. Fed.R.Civ.P. 42(a).

12, 1949); Protocols I and II to the Geneva Convention of 12 August 1949 (June 7, 1977); the Charter of the United Nations; the Declaration on Principles of International Law concerning Friendly Relations and Cooperation among States, United Nations General Assembly Resolution 2625 (XXV), October 24, 1970); Universal Declaration of Human Rights, General Assembly Resolution 217(A)(III) (December 10, 1948); the International Covenant on Civil and Political Rights, General Assembly Resolution 2200(A)(XXI) (December 16, 1966); the Basic Principles for Protection of Civilian Populations in Armed Conflicts, General Assembly Resolution 2675 (XXV) (December 9, 1970); the Hague Conventions of 1899 (II) and 1907 (IV) Respecting the Laws and Customs of Wars on Land; the Convention on the Prevention and Punishment of the Crime of Genocide, General Assembly Resolution 260A (III) (December 9, 1948); the Declaration of the Rights of the Child, General Assembly Resolution 1386 (XIV) (1959); the American Convention of Human Rights, OAS Treaty Series No. 36 (November 22, 1969); the Geneva Convention Relative to the Treatment of Prisoners of War (August 12, 1949); and the Organization of American States: Convention to Prevent and Punish Acts of Terrorism (February 2, 1971).

■ When defendants proffer that eight of these treaties are not presently obligations of the United States, plaintiffs counter that "the fact that some of these documents may not have been ratified or may not constitute treaties is totally irrelevant to the question of what is the law of nations...." Pl.Mem. in Opp. at 15, n.22. It is correct that the body of international law is not determined merely by examining the obligations of the United States. The law of nations "may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law." *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 160–61, 5 L.Ed. 57 (1820). The question whether the conduct complained of here violated the law of nations, a question the court does not reach, is fundamentally different, however, from the question whether treaties or even international law generally provide the plaintiffs with a cause of action.

■ In maintaining that their actions indeed state claims for recovery under treaties and the law of nations, plaintiffs ignore the fundamental proposition, articulated one hundred fifty-two years ago by Chief Justice Marshall in *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 7 L.Ed. 415 (1829), that treaties must provide expressly for a private right of action before an individual can assert a claim thereunder in federal court. In a clairvoyant passage, marked by restraint, that eminent jurist declared:

> Our constitution declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself, without the aid of any legislative provision. But when the terms of the stipulation import a contract—when either of the parties engages to perform a particular act, the treaty addresses itself to the political, not the judicial, department.

*Id.* at 314.

Courts have thereafter held consistently that only treaties with a specific provision permitting a private action, or one to be clearly inferred, may suffice as the basis for federal jurisdiction. Otherwise, no cause of action is stated and no federal law is applicable to the claim presented. *See Head Money Cases*, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884); *Z & F Assets Realization Corp. v. Hull*, 114 F.2d 464 (D.C.Cir.1940), *aff'd on other grounds* 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288 (1941); *George E. Warren Corp. v. United States*, 94 F.2d 597 (2d Cir. 1938), *cert. denied* 304 U.S. 572, 58 S.Ct. 1041, 82 L.Ed. 1537; *Canadian Transport Co. v. United States*, 430 F.Supp. 1168 (D.D.C.1977) *aff'd in part and rev'd and remanded in part on other grounds*, No. 77–1693 (D.C.Cir., filed Sept. 5, 1980); *Sei Fujii v. State*, 38 Cal.2d 718, 242 P.2d 617 (1952).

In *Z & F Assets*, this Circuit was confronted with a petition for an injunction

prohibiting the government from paying awards made by an international commission created after World War I. The Court found that the plaintiffs had no right to raise the claim. "Although an individual claimant may have a moral right to participate in an award, as a matter of strict legal or equitable right he has none." 114 F.2d at 472. Judge John H. Pratt of this District Court, in the *Canadian Transport* case, declared that absent a provision giving private parties the right to enforce the treaty in court, "the courts can give no redress to a person who is injured by a failure of a government to observe the terms of a treaty; such is a political question and one claiming injury must look to his government for relief." 430 F.Supp. at 1172. He also noted, "[A] federal court has no inherent power to set itself up as the instrumentality for enforcing the provisions of a treaty with a foreign nation if the Government of the United States, as a sovereign power, chooses to disregard it." *Id.* Surely, the courts cannot exercise greater power over foreign governments who allegedly violate treaty provisions than could be exercised over the United States government for such a violation.

Another instructive precedent is *Diggs v. Richardson*, 555 F.2d 848 (D.C.Cir.1976). Judge Leventhal considered the contention of the plaintiff that the courts should demand enforcement of a United Nations' Resolution calling among member states to have no dealings with South Africa. Affirming the district court's dismissal, the Court of Appeals held that no private right of enforcement existed. Judge Leventhal observed "[T]he U.N. resolution underlying the obligation does not confer rights on the citizens of the United States that are enforceable in court in the absence of implementing legislation." *Id.* at 850. *See also Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1298 (3rd Cir. 1979) ("Unless a treaty is self-executing, it must be implemented by legislation before it gives rise to a private cause of action.")

■ There are two acceptable guidelines to determine when a treaty might permit an individual cause of action. If the treaty calls for the signatory nations to enact legislation implementing the agreement, the treaty is considered executory and no private rights are conferred by it. *United States v. Postal*, 589 F.2d 862, 876–77 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979). If the treaty demonstrates an intent that private actions be implied, then a court may recognize that the treaty is enforceable in such individual actions. *See Diggs v. Richardson*, 555 F.2d 848 (D.C.Cir.1976).

■ The NAAA documents that some of the particular treaties subscribed to by the United States and outlined in the complaint have been expressly held not to provide a private right of action. *See Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978) (the Geneva Convention of Aug. 12, 1949); *Pauling v. McElroy*, 164 F.Supp. 390 (D.D.C. 1958), *aff'd* 278 F.2d 252 (D.C.Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960) (the United Nations' Charter). *Cf. Diggs v. Richardson*, 555 F.2d 848 (D.C. Cir.1976) (United Nations Resolutions not conferring rights to individual citizens and not providing specific standards).

The remainder of plaintiffs' citations to international law are equally devoid of authority finding a private right of action thereunder. The Protocols of the Geneva Convention signed June 7, 1977 are silent as to enforcement by individuals, but because they establish an international commission as means of seeking compliance, they cannot fairly be said to imply private action. By calling on signatory nations to enact implementing legislation, three of plaintiffs' sources expressly deny a private right of action. *See* United Nations General Assembly Resolution 260A, Article V; Geneva Convention Relative to Treatment of Prisoners of War, Article 129; American Convention of Human Rights, Article 28. *See also United States v. Postal*, 589 F.2d 862, 876–77 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979). Finally, the OAS Convention to Punish and Prevent Acts of Terrorism obligates its parties, in Article 1, 3, and 8, to take action consistent

with their "own laws," implying that the Convention is not meant to be completely executory. The plaintiffs have been unable to muster persuasive authority or argument that international law provides them a cause of action and their pleas must therefore succumb to the determination that their cases lack such basis for jurisdiction.

Without any foundation in federal statutes or treaties to assert a cause of action, plaintiffs next maintain that their claims arise under the federal common law which includes the law of nations. The NAAA proffers, though, that the assertion of federal common law ignores their earlier argument that federal law must somehow be pivotal in the dispute. This argument begs the question—if the law of nations is a part of the federal common law, and plaintiffs allege violations of the law of nations, then "federal" law is central to the dispute. Nonetheless, plaintiffs' assertion that they state in each case a cause of action is not supported.

■ The contention that plaintiffs can state a cause of action under federal common law, comprised in part by the law of nations, appears to frustrate the traditional strictures placed on the championing of claims under international law. The requirement that international law provide a private right of action produces no less compelling reason as concerns the law of nations than it does when treaties are involved. To permit plaintiffs to assert under § 1331 claims under the law of nations notwithstanding the absence of private rights of action—express or implied—sanctions judicial interference with foreign affairs and international relations, traditionally an area where courts have chosen to stay their hands absent some fundamental constitutional violation. *See generally Holmes v. Laird*, 459 F.2d 1211 (D.C.Cir. 1972), *cert. denied*, 409 U.S. 869, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); *Pauling v. McNamara*, 331 F.2d 796 (D.C.Cir.1963), *cert. denied*, 377 U.S. 933, 84 S.Ct. 1336, 12 L.Ed.2d 297 (1964). Thus, even in the face of their extraordinary plight, the plaintiffs fail to state a cause of action arising under the Constitution, laws, or treaties of the United States because neither the criminal statutes, the treaties, nor the law of nations cited by plaintiffs provides a cause of action through these courts to individuals to seek redress of alleged human rights violations.

As a separate basis of jurisdiction, plaintiffs assert that this court has power to hear their claim under the Alien Tort Claims Act, 28 U.S.C. § 1350, which states, "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." This obscure jurisdictional grant recently was reawakened in *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980), where the Court accepted jurisdiction over the claim of a Paraguayan national against a former official of the Paraguayan national against a former official of the Paraguayan government for the alleged torture of his son. Plaintiffs seek to persuade this Court that the mandate of *Filartiga* in that instance should envelop denial of the defendants' motions.

■ For jurisdiction to vest under § 1350, three elements must be present: 1) the claim must be made by an *alien*, 2) it must be for a *tort*, and 3) the tort must be *in violation of the law of nations or the treaties of the United States*. Initially, plaintiffs' complaints suffer defect in that some of the plaintiffs and their personal representatives are citizens of the United States and cannot invoke a claim under § 1350. In Civil Action No. 81–0563, Hanoch Tel-Oren is a citizen of the United States, and in Civil Action No. 81–0564, six members of the Tel-Oren family claim United States citizenship. This, however, is not a fatal defect to the entire litigation, because plaintiffs could amend their complaint to satisfy the first element under the Alien Tort Claims Act.

The allegations make clear that these actions sound in tort, and plaintiffs contend that the torts are in violation of the law of nations or the treaties of the United States. Defendants do not dispute these claims, averring instead that the complaints do not

state actions in tort against the NAAA, the PCNA, or the PIO.

As to the PCNA, the NAAA, and the PIO, plaintiffs' allegations of tortious conduct and conspiracy are clearly insubstantial. The complaints allege that those three organizations raised funds to support the attack on the plaintiffs, but there are no specific allegations whatsoever to support a claim of conspiracy. Moreover, plaintiffs' statement as to the events which occurred in the United States, *see, e. g.,* Civil Action No. 81–0563, Complaint at ¶ 49, is vague and conclusory. The averments as to the responsibility of the defendants similarly rest on conclusory suggestions that the NAAA, the PCNA, and the PIO acted in furtherance of the conspiracy to arm the plaintiffs. *See id.* at ¶¶ 52–54.

 These three defendants have not been connected to the claimed torts sufficiently to permit the action to proceed against them. Various courts have considered complaints such as the instant one and held that vague, conclusory allegations of conspiracy are insufficient to predicate an action for damages. *See Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir. 1972); *Granville v. Hunt,* 411 F.2d 9, 11 (5th Cir. 1969); *Connor v. Real Title Corp.,* 165 F.2d 291, 294 (4th Cir. 1947). Simply put, plaintiffs have not satisfied the requirement of § 1350 that a tort be stated in violation of the law of nations or a treaty of the United States against the NAAA, the PCNA, or the PIO.

 As to all defendants, however, the complaint must be dismissed because there is no jurisdiction under § 1350. That statute serves merely as an entrance into the federal courts and in no way provides a cause of action to any plaintiff. Somewhere in the law of nations or in the treaties of the United States, the plaintiffs must discern and plead a cause of action that, if proved, would permit the Court to grant relief. The plaintiffs cite no cause of action given to them by the law of nations or by treaties of the United States. Just as discussed under § 1331, an action predicated on a treaty or on more general norms of international law must have at its basis a specific right to a private claim.[2] Plaintiffs have demonstrated no such entitlement. "[T]o interpret international human rights law to create a federal private right of action overstates the level of agreement among nations on remedies for human rights violation." Note, *Torture as a Tort in Violation of International Law: Filartiga v. Pena-Irala,* 33 Stan.L.Rev. 353, 357 (1981). Indeed, it is significant that the provision of private rights of action in recent international conventions has stalled efforts in the United States Senate to gain ratification. *See* Blum & Steinhardt, *Federal Jurisdiction over International Human Rights Claims: The Alien Tort Claims Act after Filartiga v. Pena-Irala,* 22 Harv.Intl. L.J. 53, 71–72 n. 82 (1981); Note, *supra,* at 359 ("In the United States, for example, an international agreement banning genocide has gone unratified chiefly because the Senate did not want to expose American citizens to suits in foreign countries.") In short, unless treaties to which the United States is a party or even the law of nations generally provide a private right of action, no jurisdictional grant, be it § 1331 or § 1350, can aid a plaintiff seeking relief in federal district court.[3]

---

2. Indeed, plaintiffs themselves recognize that the jurisdictional bases of § 1331 and § 1350 are identical as to the role of the law of nations. "The jurisdiction of this Court, pursuant to § 1331 and § 1350 therefore are the same. This jurisdictional basis is the violation of international law which creates a federal question because international law is part of the federal common law and the laws of the United States." Pl.Opp. to NAAA at 22.

3. In addition to jurisdiction under § 1331 and § 1350, plaintiffs cited the diversity statute, § 1332, and the Foreign Sovereign Immunities Act, §§ 1330, 1602–1611. The NAAA argued strenuously that jurisdiction was improper under both of these statutes, and plaintiffs did not respond. Defendant NAAA is unquestionably correct. As to the diversity of citizenship, the presence of aliens on both sides of the contest removes the power of the federal courts to hear the action under § 1332. *See Montalet v. Murray,* 8 U.S. (4 Cranch) 46, 2 L.Ed. 545 (1807); *Field v. Volkswagenwerk AG,* 626 F.2d 293 (3rd Cir. 1980). As to the Foreign Sovereign Immu-

The absence of an individual enforcement mechanism in this area does not subject a complaint to dismissal merely for failure to state a claim under Fed.R.Civ.P. 12(b)(6). That inquiry would be limited to a determination whether plaintiffs' complaint, if proved, would meet the requirements of traditionally defined civil actions. Rather, because "[t]he reference [in § 1350] to the law of nations must be narrowly read if the section is to be kept within the confines of Article III," *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975) (Friendly, J.), it follows that it is a jurisdictional prerequisite to § 1350 that a complaint not only plead a private right of action but that the subsequent motions support this allegation. Otherwise, federal courts would clutch power over cases, under the guise of the law of nations, undoubtedly casting effect on international relations and foreign policy when no country, friend or foe, has consented to an American court opening its door to one alleging violations of international legal principles. In the end, of course, it behooves the court to discern promptly in cases such as the instant whether international law has expressly or impliedly entrusted individuals with the authority to enforce its precepts. Because that determination may ultimately cloak a court with potent authority over a foreign land, the query is jurisdictional, not merely a demurrer to the plaintiffs' complaint. Absent the clear indication, not present here, that nations intend to subject themselves to such worldwide jurisprudential assaults, jurisdiction under § 1350 will not vest.

The NAAA raises a wholly separate and distinct issue from its jurisdictional attack with its contention that the actions are barred by the statute of limitations. The defendant maintains that the torts alleged by plaintiffs, under whatever label might be given to them, are intentional torts like those in D.C.Code 12–301(4), for which a one year limitation period is ˙provided.

Plaintiffs assert that the torts they allege fall under the residual limitation period provided by D.C.Code 12–301(8) of three years, and that the application of the one year period would suppress federal policies and values underlying international law.

 Unless a limitation is specifically provided by federal statute or treaty, a federal court must look to the limitations period of the district in which it sits and apply the most analogous statute. *Steorts v. American Airlines, Inc.*, 647 F.2d 194 (D.C.Cir.1981). Count I of the complaint asserts torts of "assault, battery, false imprisonment, intentional infliction of emotional distress and/or intentional infliction of cruel, inhuman and degrading treatment." Complaint, Civil Action No. 81–0563 ¶ 64; Complaint, Civil Action No. 81–0564 ¶ 71. Unquestionably, the torts of assault, battery, and false imprisonment are barred by the one year statute of limitations, D.C.Code 12–301(4). The question arises whether the other allegations are much like those torts enumerated in § 12–301(4) or whether they are different enough to justify the application of the three year period in § 12–301(8).

 It is well accepted that the "label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *Aktiebolaget Bofors v. United States*, 194 F.2d 145, 148 (D.C.Cir.1951). *See also Johnson v. United States*, 547 F.2d 688 (D.C.Cir.1976); *Universal Airline v. Eastern Air Lines*, 188 F.2d 993 (D.C.Cir.1951) ("the statute of limitations . . . cannot be evaded by referring to [a] cause of action in some other terms." *Id.* at 996). Clearly, the torts alleged in Count I are dependents of the same personal interests infringed by the intentional torts that would be subject in the District of Columbia to the one year limitation period. Plaintiffs' contention that the one year period is unreasonably short, stultifying important federal and international policies, is

unsupported especially in consideration that no causes of action are provided in the cited treaties or in the body of international law generally.

 As to Counts II–V, alleging various torts claimed to be defined by international law, the same analysis would apply. Substantively, they are no different from the claims in Count I; they simply attempt to state a cause of action under different sources, e. g., treaties, federal common law, and the law of nations. Plaintiffs' contention that the NAAA fraudulently concealed facts about the cause of action, justifying the tolling of the limitations period, has no basis in the complaint and has not been pleaded specifically. *See* Fed.R.Civ.P. 9(b).

As these actions are now dismissed, no inference, implication, or comment is to be drawn about this Court's view of the merits.[4] Rather, the dismissals represent findings that when the Framers crafted Article III and when the first Congress considered jurisdictional grants to the federal courts, they did not contemplate the use of the federal courts as a substitute for an international tribunal, adjudicating claims arising under international law, when no private right of action was provided.[5]

Accordingly, it is this 30th day of June, 1981

ORDERED, that these actions are dismissed for lack of jurisdiction and because they are barred by the statute of limitations.

---

4. Despite the absence of two of the named defendants, Libya and the PLO, it is of course within the Court's power to dismiss the action where it appears that jurisdiction lacks. Fed.R. Civ.P. 12(h)(3). Moreover, the failure to state a cause of action and the bar of the statute of limitations apply generally to the plaintiffs as against all defendants. It is recognized that unique legal questions have been posited, warranting expedited treatment of the jurisdictional issues. Because the Court lacks jurisdiction to consider the merits of plaintiffs' cases, the motions of the PCNA and of the PIO for summary judgment need not be addressed.

5. The possible presumptuousness of private human rights lawsuits is self-evident. Imagine a suit brought in Mexico, for example, by the Black Panther Party against the visiting chief of police of Philadelphia, alleging violations of international conventions prohibiting genocide and systematic racial discrimination. Certainly, such an application of international law would meet stiff, and legitimate, opposition in the United States. Note, *supra*, at 359.