Brenda JONES, Individually, and as Administratrix of the Estate of Evan A.M. Jones, Deceased, Plaintiff,

v.

PETTY RAY GEOPHYSICAL GEOSOURCE, INC., et al., Defendants.

Civ. A. No. H–86–2179.

United States District Court, S.D. Texas, Houston Division.

Sept. 27, 1989.

James F. Scherr, Russell Aboud, El Paso, Tex., for plaintiff.

Richard Munzinger and Joseph L. Hood, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, Tex., Edward J. Hennessy, Hennessy & Associates, Jon David Ivey, Dotson, Babcock & Scofield, John H. Boswell, Boswell & Hallmark, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

LAKE, District Judge.

This action arises from the death of Texas resident, Evan Jones, while working as an engineer for Geophysical Geosource, Inc. in the Republic of Sudan. The plaintiff alleges that the defendants negligently failed to provide the decedent with a safe place to work, adequate military/police protection or failed to move him from the area or warn him of danger from nearby insur-gents. Before the Court is the Republic of Sudan's motion to dismiss for lack of subject matter and personal jurisdiction or, in the alternative, a motion for transfer of venue to the District of Columbia.

Federal courts have jurisdiction over actions against foreign states pursuant to 28 U.S.C. § 1330(a). This section provides that original subject matter jurisdiction lies in federal district courts "as to any claim for relief *in personam* with respect to which the foreign state is entitled to immunity under the Foreign Sovereign Immunity Act 28 U.S.C. § 1602, *et seq.* [FSIA] or under any applicable international agreement." Personal jurisdiction over the foreign state is achieved through service of process under 28 U.S.C. § 1608, which provides for special service through international channels. 28 U.S.C. § 1330(b). As a separate basis of jurisdiction, the plaintiff asserts that this Court has the power to hear her claim under the Alien Tort Claims Act, 28 U.S.C. § 1350, which grants subject matter jurisdiction to district courts "over any civil action by an alien for tort only, committed in violation of the Law of Nations or a treaty of the United States."

In defense of this action Sudan has attacked the manner of service under 28 U.S.C. § 1608 and asserted its grant of sovereign immunity under FSIA. Generally, this statute grants immunity to foreign states and their agencies or instrumentalities from suits in the United States. 28 U.S.C. § 1604. It also creates five exceptions to this grant of immunity, of which two have been asserted by the plaintiff in the present case, the "Commercial Activity" exception, § 1605(a)(2), and the "Noncommercial Tort" exception, § 1605(a)(5). Once a basis of jurisdiction is alleged, the burden of proof rests on that foreign state to demonstrate that immunity should be granted. *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1378 (5th Cir. 1980).

### 28 U.S.C. § 1605(a)(2)

Foreign states are denied immunity where they step down from their foreign status and engage in commercial activity.

Section 1605(a)(2) provides in pertinent part that "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the states in any case in which the action is based upon (1) a commercial activity carried on in the United States by the foreign state; (2) an act performed in the United States in connection with commercial activity of the foreign state elsewhere; or (3) an act outside the territory of the United States in connection with commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

For this Court to assume jurisdiction over Sudan under § 1605(a)(2), it must answer a series of five questions favorably to the plaintiff:

(1) Does the conduct the action is based upon or related to qualify as "commercial activity?"

(2) Does that commercial activity bear the relation to the cause of action in the United States described by one of the three phrases of § 1605(a)(2), warranting the court's exercise of subject matter jurisdiction under § 1330(a)?

(3) Does the exercise of this congressional subject matter jurisdiction lie within the permissible limits of the "judicial power" set forth in Article III?

(4) Does subject matter jurisdiction under § 1330(a) and service under § 1608 exist, thereby making personal jurisdiction proper under § 1330(b)?

(5) Does the exercise of personal jurisdiction under § 1330(b) comply with the due process clause, thus making personal jurisdiction proper?

*Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 308 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

Under the Immunities Act "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity is determined by reference to the nature of the course of conduct or particular transaction or act, rather than references to its purpose. 28 U.S.C. § 1603(d). Thus, if an activity is one that normally could be engaged in by a private party, it is a "commercial activity." However, if the activity is one in which only a sovereign can engage, the activity is classified as non-commercial for the purposes of the FSIA. The FSIA, unfortunately, provides little guidance in making this determination, giving wide latitude to the judiciary to consider each case on its facts. *See generally* Report of House Judiciary Committee Nos. 94–1487 [reprinted in 1976], U.S.Code Cong. and Admin.News 6604, 6615. *See also Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d at 308–09.

█ The plaintiff asserts that Sudan engaged in "commercial activities" by (1) entering into a production sharing agreement with Total Exploration and International Energy Development Company S.A. and (2) recruiting Texas residents for these operations. However, these arguments are unpersuasive. The plaintiff has offered insufficient evidence to refute Sudan's assertions that it did not recruit Texas residents for these drilling operations. The plaintiff argues that the expatriate employee provisions in the production agreement are evidence that Sudan recruited Texas residents. However, this argument is unpersuasive. These provisions merely indicate that the parties contemplated an individual contractor's use of non-Sudanese employees. The agreement does not suggest that any party hire Texas residents. Neither does it require them to do so. The fact that one of the parties, Total Exploration, had previously contracted with Texas residents does not implicate Sudan in the recruitment of Texans. Moreover, the record reflects that Geosource, Inc., the decedent's employer, was directly recruited by Total Exploration and worked under a contract assigned to Total Soudan, not the Republic of Sudan.

█ A sovereign's conduct with respect to its natural resources is presumptively a governmental function. *See International Association of Machinists v. The*

*Organization of Petroleum Exporting Countries,* 477 F.Supp. 553, 567–569 (C.D. Cal.1979), *aff'd on other grounds,* 649 F.2d 1354 (9th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). A basic attribute of sovereignty is a nation's control over its mineral resources and, short of actually selling these resources on the world market, decisions and conduct concerning them are uniquely governmental in nature. *Id.* The production sharing agreement indicates that Sudan was exercising its sovereign control over its natural resources when it granted drilling concessions to Total Exploration and International Energy Development Company S.A. (IEDC). The preamble of the contract states that it was for the purpose of assisting Sudan in exploring and developing its petroleum resources. The contract also states that the government granted the concessions in its official capacity and reserves both its right to other natural resources within the area covered by the agreement and to requisition the oil during emergencies. (Articles 3 and 20, Production Sharing Agreement between Defendants Republic of Sudan, Total Exploration and IEDC). Under these circumstances Sudan's granting of mineral concessions was essentially governmental and non-commercial in nature, and § 1605 cannot be used to abrogate Sudan's immunity.

■ Furthermore, even if these activities were commercial activities under the FSIA, they do not bear the relation to the cause of action and to the United States as described by any of the three clauses of § 1605(a)(2) that would warrant the Court's exercise of subject matter jurisdiction under § 1330(a). With respect to the exception for commercial activities in the United States, the connection between Sudan's drilling concessions and any activity in the United States is so attenuated that this clause is inapplicable. The FSIA defines commercial activity within the United States as "having substantial contact with the United States." 28 U.S.C. § 1603(e) (1982). In this case the production sharing agreement was not signed within the United States and no United States based corporation was a party to the contract. The

agreement concerned drilling operations in the Sudan, not in the United States. Sudan performed no part of the contract in the United States and the contract was not expressly subject to United States' laws. The existence of a contract between Sudan and Total Exploration, a French corporation that does have contacts within the United States, does not amount to "substantial contact" within the meaning of the statute. Likewise, with respect to the second exception for an act committed in the United States, there is no evidence on record to refute Sudan's assertion that it committed no act within the United States.

Finally, the plaintiff's cause of action is not based upon an act done in connection with commercial activities that had a direct effect in the United States. Where the wrongful act that is the basis of the suit occurred outside the United States, emotional injury and stress caused to relatives in the United States are not direct consequences of the act. Thus, the commission of a tort by a foreign sovereign against an American citizen on its own soil does not constitute a "direct effect" in the United States simply because the American citizen is also financially injured. *Harris v. VAO Intourist Moscow,* 481 F.Supp. 1056, 1065 (E.D.N.Y.1979). In light of plaintiff's allegations (1) that the wrongful act was the failure to warn the decedent of danger from insurgents in Sudan and (2) that the decedent died in Sudan, this Court cannot pierce Sudan's veil of immunity.

### *28 U.S.C. § 1605(a)(5)*

■ Alternatively, plaintiff urges that this Court should exercise jurisdiction over Sudan under the "non-commercial tort" exception to the FSIA § 1605(a)(5). Section 1605(a)(5) provides that a suit for damages based on an alleged non-commercial tort committed by a foreign state in the United States is actionable in federal court. For jurisdiction to exist the following must be shown: (1) a non-commercial act by the foreign state (2) causing personal injury or damages to or loss of property, and (3) the claim is not based upon the exercise of a discretionary function or upon libel, slan-

der, misrepresentation or interference with contract rights.

Section 1605(a)(5) is silent with respect to where the non-commercial tort must occur for jurisdiction to exist. However, courts have held through interpretation of the legislative history, that the tort, *in whole*, must occur in the United States. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C.Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984).

In this case the complaint admits that decedent's death occurred in Sudan. Since this death is the basis of the plaintiff's present wrongful death action, if any tort was committed, it was committed in Sudan, not in the United States. Section 1605(a)(5) is therefore not applicable to bring Sudan within the jurisdiction of this Court.

### 28 U.S.C. § 1350

■ The complaint also adds Sudan as a party defendant in this suit under 28 U.S.C. § 1350, the Alien Tort Statute. Before a United States court may assume jurisdiction under the Alien Tort Statute, it must be established that (i) plaintiff is an alien, (ii) the action is for a tort, and (iii) the tort is in violation of the law of nations or treaties of the United States. *Hanoch Teloren v. Libyan Arab Republic*, 517 F.Supp. 542 (D.D.C.1981), *aff'd*, 726 F.2d 774 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). In this action the plaintiff has failed to meet the first and third requirements.

■ The plaintiff's complaint does not allege that the plaintiff is an alien. In addition, the plaintiff cannot show that her cause of action gives rise to a violation of treaties of the United States or the law of nations. Section 1350 merely serves as an entrance into the federal courts and in no way provides a cause of action to any plaintiff. *Hanoch*, 517 F.Supp. at 549. Somewhere in the law of nations or in the treaties of the United States, the plaintiff must discern and plead a cause of action that, if proved, would permit this Court to grant relief. Courts have narrowly construed the causes of action available to private litigants under the law of nations. *See, e.g.,*

*Cohen v. Hartman*, 490 F.Supp. 517 (S.D. Fla.1980), *aff'd*, 634 F.2d 318 (5th Cir.1981) (summarizing the scarce case law in this area). "The mere fact that many or even all nations consider an act a violation of their domestic law does not suffice to create a principle of international law." *Amerada Hess Shipping Corp. v. Argentine Republic*, 830 F.2d 421, 423 (2d Cir.1987), *rev'd on other grounds*, —— U.S. ——, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). *See also IIT v. Vencap Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975). "It is only where the nations of the world have demonstrated that the wrong is of mutual and not merely several, concern, by means of express international accords, that a wrong generally recognized becomes an international law violation within the meaning of [§ 1350]." *Filartiga v. Pena–Irala*, 630 F.2d 876, 888 (2d Cir.1980). "What constitutes the 'law of nations' can be ascertained by consulting the works of jurists, writing professedly on public law, or by the general usage and practices of nations, or by judicial decisions recognizing and enforcing such law." *Id.* at 880.

The plaintiff's complaint alleges that Sudan was negligent in failing to warn plaintiff's decedent of imminent political danger and violence and failing to provide adequate police protection and security to decedent. However, the plaintiff has not shown where this cause of action arises under the "law of nations" and has not cited any persuasive source that recognizes a sovereign's duty to protect foreign nationals from harm.

The plaintiff also alleges that Sudan failed to observe the decedent's human rights and fundamental freedoms found in "international law." (Plaintiff's Supplemental Response to Sudan's Motion to Dismiss, p. 14). However, the plaintiff has not shown where this cause of action arises in international human rights law. Indeed, federal courts have been hesitant to find causes of action in this area for purposes of the Alien Tort Statute. "To interpret international human rights law to create a federal private right of action overstates the level of agreement among nations on

remedies for human rights violations." *Hanoch*, 517 F.Supp. at 549. This Court cannot create causes of action where none exist. Thus, Sudan is not subject to this Court's jurisdiction under the Alien Tort Statute.

### Conclusion

For the reasons discussed above, the Court finds that the Republic of Sudan is immune from suit in the United States under the Foreign Sovereign Immunity Act (FSIA), 28 U.S.C. § 1604 and that the Court therefore lacks subject matter jurisdiction over this action. Since this Court lacks subject matter jurisdiction, it also lacks personal jurisdiction as mandated by 28 U.S.C. § 1330(b). The Court also finds that it lacks jurisdiction to hear this action against Sudan under the Alien Tort Statute, 28 U.S.C. § 1350. Accordingly, The Republic of Sudan's Motion for Dismissal for Lack of Jurisdiction is GRANTED.