**Tejpaul JOGI, Plaintiff,**

v.

**John PILAND, David Madigan, Ron Carper, and Tim Voges, Defendants.**

**No. 00–2067.**

United States District Court, C.D. Illinois.

Feb. 14, 2001.

Tejpaul Singh Jogi (Pro Se), Ina, IL.

Jerome P. Lyke, Flynn, Palmer & Tague, Champaign, IL, for Defendant.

## ORDER

BAKER, District Judge.

The Vienna Convention on Consular Relations requires a government officer to notify a foreign national who has been arrested, imprisoned or taken into custody of his right to contact a consulate from his country of origin. Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36(b), 21 U.S.T. 77, 596 U.N.T.S. 261. Alleging that the defendant law enforcement officers violated his rights under this treaty, Tejpaul Jogi has filed a complaint under the Alien Tort Claims Act. 28 U.S.C. § 1350 (West 2000). The defendants have moved to dismiss this claim, and the plaintiff has moved to strike the defendants' reply to his response to the motion. For the following reasons, the court grants both motions.

## BACKGROUND

The plaintiff emigrated to this country from India in 1990, at the age of fourteen. He is now a permanent resident of the United States, but retains his Indian citizenship. On October 6, 1995, the plaintiff was charged in Champaign County with aggravated battery with a firearm. On October 18, 1995, he surrendered to the authorities. At that time, Champaign County Sheriff's Department Investigator Ron Carper took him to a conference room, where another investigator, Tim Voges, and the plaintiff's mother were present. Carper advised the plaintiff of his rights under *Miranda*, which the plaintiff promptly invoked. The interview ceased immediately, and the plaintiff made no incriminating statement.

The following day, the plaintiff appeared in court and was appointed counsel. He ultimately pled guilty and was sentenced to twelve years imprisonment. At no time during the pendency of his case did anyone advise the plaintiff of his right to contact an Indian consulate.

## ANALYSIS

As an initial matter, the court will address the plaintiff's motion to strike the defendants' reply to his response to their motion to dismiss. Local Rule 7.1 of the

Central District of Illinois does not authorize a movant to file a reply to a response to a motion unless that motion is for summary judgment. Thus, the defendants were not authorized to file a reply to the plaintiff's response without first seeking leave of the court. They did not do so, and the court therefore grants the plaintiff's motion to strike.

In their motion to dismiss, the defendants argue that the court lacks subject matter jurisdiction over the plaintiff's claim. The plaintiff brings his complaint under the Alien Tort Claims Act, which provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The plaintiff asserts that the defendants violated the Vienna Convention because they failed to advise him of his right to contact an Indian consulate, and that this violation triggers jurisdiction under the Alien Tort Claims Act.

■ Article 36 of the Vienna Convention on Consular Relations provides that law enforcement officials shall inform arrested foreign nationals of their right to notify their consulates. As a general rule, international treaties, as agreements among sovereign nations, do not create personal rights that an individual may enforce. *See Matta–Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.1990), *cert. denied*, 498 U.S. 878, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990); *United States v. Rodrigues*, 68 F.Supp.2d 178, 181 (E.D.N.Y. 1999). The United States Supreme Court has acknowledged, however, that this general rule has exceptions. *See United States v. Alvarez–Machain*, 504 U.S. 655, 667–68, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). In fact, the Court has stated that Article 36 of the Vienna Convention "arguably confers on an individual the right to consular assistance following arrest." *Breard v. Greene*, 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (per curiam). Other courts, including the Seventh Circuit, have had the opportunity to decide whether Article 36 creates individual rights enforceable in criminal proceedings, but all have avoided doing so. *See United States v. Lawal*, 231 F.3d 1045, 1048 (7th Cir.2000); *United States v. Chaparro–Alcantara*, 226 F.3d 616, 621 (7th Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 599, 148 L.Ed.2d 513 (2000); *see also United States v. Cordoba–Mosquera*, 212 F.3d 1194, 1196 (11th Cir.2000) (per curiam), *cert. denied sub. nom Zuniga v. United States*, —— U.S. ——, 121 S.Ct. 893, 148 L.Ed.2d 800 (2001); *United States v. Li*, 206 F.3d 56, 60 (1st Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 378, 148 L.Ed.2d 292 (2000); *United States v. Lombera–Camorlinga*, 206 F.3d 882, 885 (9th Cir.2000) (en banc), *cert. denied*, —— U.S. ——, 121 S.Ct. 481, 148 L.Ed.2d 455 (2000). No court has addressed the issue in context of a civil claim for monetary damages. In any event, this court need not resolve this broad question either, because it finds that the plaintiff's allegations are insufficient to trigger jurisdiction under the Alien Tort Claims Act.

The plaintiff is proceeding pro se; the court must therefore construe his complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Nevertheless, when considering whether to dismiss a section 1350 claim for lack of subject matter jurisdiction, courts typically engage "in a more searching preliminary review of the merits than is required ... under the more flexible 'arising under' formulation." *Filartiga v. Pena-Irala*, 630 F.2d 876, 887 (2d Cir.1980). Thus, this court must thoroughly examine the merits of the plaintiff's complaint to determine whether it has jurisdiction.

■ To satisfy section 1350's jurisdictional threshold, a plaintiff must allege that a "tort" was committed "in violation" of international law or a treaty of the United States. Only those treaty provisions that would actually give rise to a tort action by reason of their violation are implicated by the Alien Tort Claims Act.

Thus, a plaintiff may bring an action under section 1350 only for a tort committed in violation of a United States treaty, not for any violation of a treaty. *Xuncax v. Gramajo,* 886 F.Supp. 162, 181 (D.Mass.1995).

■ In this case, the plaintiff has alleged a violation of a United States treaty; namely, he alleges that the defendants violated Article 36 the Vienna Convention. He has not, however, alleged a tort. Implicit in any wrong labeled a tort is an element of damages. *See Zepeda v. Zepeda,* 41 Ill.App.2d 240, 190 N.E.2d 849, 857 (1963), *cert. denied,* 379 U.S. 945, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964) (*citing* Prosser, Law of Torts, 2d ed., sec. 1, pp. 2–4). Yet the plaintiff does not allege how the defendants' failure to abide by the treaty damaged him. According to his own complaint, he was advised of his *Miranda* rights, and elected to invoke them. The interrogation ceased at once, and he made no incriminating statement. A court appointed him an attorney the next day, and he was represented throughout the proceedings. He alleges no specific prejudice or harm from the Indian consulate's lack of involvement. He certainly does not allege that a consulate's familiarity with the American legal system would have surpassed that of his attorney's. Rather, he merely speculates that "the outcome of his case would have been more favorable for him had the Indian Consulate been involved" and that he now "has no choice but to think 'What If' for the rest of his prison term." Thus, even construing his allegations liberally, the court can discern no element of damages from the plaintiff's speculation.

Moreover, the Alien Tort Claims Act "applies only to shockingly egregious violations of universally recognized principles of international law." *Zapata v. Quinn,* 707 F.2d 691, 692 (2d Cir.1983) (per curiam); *see also Kadic v. Karadzic,* 70 F.3d 232, 246 (2d Cir.1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996) (noting that the "Act appears to provide a remedy for the appellants' alle-gations of violations related to genocide, war crimes, and official torture...."); *De Wit v. KLM Royal Dutch Airlines, N.V.,* 570 F.Supp. 613, 618 (S.D.N.Y.1983) (finding allegations of wrongdoing insufficiently extraordinary to invoke section 1350). In determining whether the plaintiff suffered an egregious wrong as a result of the defendants' failure to abide by the Vienna Convention, it helps to consider the objectives of this treaty. The convention arose to deter a common international practice of holding people incommunicado after arrest. *United States v. Kurdyukov,* 75 F.Supp.2d 660, 664 (S.D.Tex.1999) (*citing* Victor M. Uribe, Consuls at Work: Universal Instruments of Human Rights and Consular Protection in the Context of Criminal Justice, 19 Hous. J. Int'l L. 375 (1997)). According to the plaintiff's own complaint, the defendants engaged in no behavior even remotely resembling this condemned practice. The defendants' omissions may have technically violated the Vienna Convention, but their wrongdoing did not amount to the type of "shockingly egregious violations" of international law that section 1350 seeks to remedy.

Accordingly, the court grants the defendants' motion to dismiss (# 15), as well as the plaintiff's motion to strike the defendants' reply (# 23). The plaintiff's complaint is therefore dismissed with prejudice. This case is terminated. The parties shall bear their own costs.