**Polyns C. BIEREGU, Plaintiff,**

v.

**John ASHCROFT, Attorney General, et al., Defendants.**

**Civil Action No. 01–4948.**

United States District Court,
D. New Jersey.

May 1, 2003.

Polyns C. Bieregu, Loretto, PA, Plaintiff, pro se.

Neil Rodgers Gallagher, Esquire, Newark, NJ, for Defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiff Polyns C. Bieregu ("Bieregu"), a prisoner currently confined at the Federal Correctional Institution at Loretto, Pennsylvania, seeks to bring this action pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350, alleging violations of his

rights under Article 36 of the Vienna Convention on Consular Relations.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that dismissal of the Complaint is warranted. Nothing in this case suggests that plaintiff may be able to state a valid claim by amending the Complaint at this time.[1]

## I. *BACKGROUND*

Plaintiff, a Nigerian citizen, states that he was arrested in November 1991, and was subsequently convicted for conspiracy to import and conspiracy to possess with intent to distribute a controlled substance in violation of United States law. (Complaint ¶¶ 8–10; *see also* Docket No. 91–cr–533 (DRD) (D.N.J.).) Plaintiff also states that his property, including an automobile and $18,000 in United States currency, were seized and subsequently forfeited to the United States government. (Compl.¶ 8.) Plaintiff alleges that he was never, during his arrest, detention, trial, or subsequent incarceration advised of his right under Article 36 to consult with a consular official. (Compl.¶¶ 9–10, 13.) He contends that the failure of Defendants to advise him of his right to consular notification under Article 36 caused him to be deprived of his right to counsel of his choice under the Sixth Amendment to the United States Constitution, resulting in his conviction and the forfeiture of his property. (Compl.¶¶ 3, 10–12.)

Plaintiff states that he learned of Article 36 of the Vienna Convention on Consular Relations from an article published in the New York Times on August 30, 2001. (Compl.¶ 13.) The Complaint is dated October 10, 2001, and was received by the Court on October 25, 2001.

Plaintiff names as Defendants an agent of the Drug Enforcement Agency, a United States Attorney, two Assistant United States Attorneys, and three current and former Attorney Generals of the United States. These Defendants are sued in their individual and official capacities. Plaintiff seeks compensatory and punitive damages for the violation of his rights under Article 36 which led, he asserts, to deprivation of his Sixth Amendment right to counsel. He asserts that this Court has jurisdiction of his claim under 28 U.S.C. § 1331 (federal question jurisdiction), § 1332 (diversity jurisdiction), and § 1350 (the Alien Tort Claims Act).

## II. *STANDARDS FOR A SUA SPONTE DISMISSAL*

The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental entity or employee. *See* 28 U.S.C. § 1915(e)(2)(B), 1915A. The PLRA requires the Court to identify cognizable claims, and to dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.*

■ Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act

---

1. The Court notes that Defendants have submitted a Motion to Dismiss. (Docket Entry No. 9.) The Court's decision herein renders the Motion to Dismiss moot.

... many of which are routinely dismissed as legally frivolous." *Santana v. United States,* 98 F.3d 752, 755 (3d Cir.1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

■ In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997). The Court need not, however, credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.*

■ A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. *Deutsch v. United States,* 67 F.3d 1080, 1086–87 (3d Cir. 1995).

■ A *pro se* complaint may be dismissed for failure to state a claim only if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines,* 404 U.S. at 521, 92 S.Ct. 594 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Milhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir.1981).

■ Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Denton v. Hernandez,* 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Grayson v. Mayview State Hospital,* 293 F.3d 103, 108 (3d Cir.2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); *Shane v. Fauver,* 213 F.3d 113, 116–17 (3d Cir.2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); *Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 453 (3d Cir.1996).

## III. *Article 36*

The United States is a signatory to the Vienna Convention on Consular Relations ("Vienna Convention"), April 24, 1963, 21 U.S.T. 77, 101 T.I.A.S. No. 6820, 596 U.N.T.S. 261, 1967 WL 18349, which came into force on April 24, 1964, and which was ratified by the United States on October 22, 1969. *See* Cong. Rec. 30997 (1969).

The Preamble states that "the purpose of such privileges and immunities [set forth herein] is not to benefit individuals, but to ensure the efficient performance of functions by consular posts on behalf of their respective States."

Article 36 of the Vienna Convention provides, in pertinent part:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State: ...

(b) if [a detained person] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consu-

lar post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph;

(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. . . .

2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

Vienna Convention, Article 36.

The provisions of Article 36 have been implemented in federal regulations, including 28 C.F.R. § 50.5(a)(1) ("In every case in which a foreign national is arrested the arresting officer shall inform the foreign national that his consul will be advised of his arrest unless he does not wish such notification to be given."). *See also* 28 C.F.R. § 50(a)(2) (requiring the arresting agent to inform the U.S. Attorney of the arrest and of the arrestee's wishes regarding consular notification); 28 C.F.R. § 50.5(a)(3) (directing the U.S. Attorney to notify the appropriate consul in accordance with the arrestee's wishes); 8 C.F.R. § 236.1(e) (requiring the INS to notify every detained alien of the right to communicate with consul).

Article 36 has been the subject of litigation in a variety of contexts in both United States and international courts. For example, in 1998, following Paraguayan Angel Breard's unsuccessful pursuit of direct state criminal appeal, state collateral relief, and federal habeas relief, the Republic of Paraguay instituted proceedings against the United States in the International Court of Justice ("ICJ"), alleging that the United States had violated Article 36 of the Vienna Convention at the time of Breard's arrest. *See Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). The ICJ issued an "Order on Provisional Measures" requesting that the United States "take all measures at its disposal to ensure that Angel Francisco Breard is not executed pending the final decision in these proceedings . . . ," pursuant to which Order the Republic of Paraguay, the Ambassador of Paraguay to the United States, and the Consul General of Paraguay to the United States (collectively, "Paraguay") filed a motion in the United States Supreme Court for leave to file a bill of complaint, citing the Court's original jurisdiction over cases "affecting Ambassadors . . . and Consuls." *Id.* at 374–75, 118 S.Ct. 1352.

Clearly, Breard had procedurally defaulted any Vienna Convention claim he might have had, yet he and Paraguay contended before the Supreme Court that his Vienna Convention claim could be heard in federal court because the Vienna Convention was the "supreme law of the land" and, thus, trumped the procedural default doctrine. *Id.* at 375, 118 S.Ct. 1352. The Supreme Court rejected this argument on two grounds. First, the Court held that, "absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State." *Id.* at 375, 118 S.Ct. 1352 (citing, *inter alia,* Vienna Convention Art. 36(2), "which provides that the rights expressed in the Convention 'shall be exercised in conformity with the laws and regulations of the receiving State,' provided that 'said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended' ").

"Second, although treaties are recognized by our Constitution as the supreme law of the land, that status is no less true of provisions of the Constitution itself, to which rules of procedural default apply. We have held 'that an Act of Congress ... is on a full parity with a treaty, and that when a statute which is subsequent in time is inconsistent with a treaty, the statute to the extent of conflict renders the treaty null.'" *Id.* at 376, 118 S.Ct. 1352 (citations omitted). As federal law, enacted after the Vienna Convention became effective, prohibited Breard from obtaining an evidentiary hearing in his federal habeas proceeding because he had failed to develop the factual basis of the claim in state court proceedings, *see* 28 U.S.C. § 2254(a), (e)(2), Breard could not establish his claim in a federal habeas proceeding. *Id.* at 376–77, 118 S.Ct. 1352.

In dicta, the Court noted that Article 36 "arguably confers on an individual the right to consular assistance following arrest," but that, even were Breard's claim properly raised and proved, "it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial." *Id.* at 377, 118 S.Ct. 1352 (citation omitted). The Court further noted that Breard's trial attorneys "were likely far better able to explain the United States legal system to him than any consular official would have been." *Id.* The Court considered his claim of prejudice, that had the Vienna Convention been followed he would have pursued a plea offer that would have spared him the death penalty, "far more speculative than the claims of prejudice courts routinely reject in those cases [where] an inmate alleges that his plea of guilty was infected by attorney error." *Id.* (citation omitted).

Twice since *Breard,* the International Court of Justice ("ICJ") has addressed claims against the United States involving its application of Article 36. In *LaGrand (Germany v. United States of America),* 2001 I.C.J. 104 (2001), involving a German national who was sentenced to death and executed during the pendency of the proceedings, the ICJ held that:

"Article 36, paragraph 1, creates individual rights, which, by virtue of the Optional Protocol, may be invoked in this Court by the national State of the detained person." *LaGrand,* 2001 I.C.J. 401 ¶ 77. The ICJ further held that, in the circumstances presented in *LaGrand,* "the procedural default rule had the effect of preventing 'full effect [from being] given to the purposes for which the rights accorded under this article are intended', and thus violated paragraph 2 of Article 36." *Id.* ¶ 91. Turning to the question of remedies, the ICJ stated that "if the United States ... should fail in its obligation of consular notification to the detriment of German nationals, an apology would not suffice in cases where the individuals concerned have been subjected to prolonged detention or convicted and sentenced to severe penalties. In the case of such a conviction and sentence, it would be incumbent upon the United States to allow the review and reconsideration of the conviction and sentence by taking account of the violation of the rights set forth in the Convention. This obligation can be carried out in various ways. The choice of means must be left to the United States."

*Id.* ¶ 125. Finally, reaching a question of first impression, the ICJ held that its "orders on provisional measures"[2] have "binding effect." *Id.* ¶ 109. Although

---

**2.** During the course of the proceedings, the ICJ had issued an Order on Provisional Measures, pursuant to Article 41 of the Statute of

the Court, directing that "(a) The United States of America should take all measures at its disposal to ensure that Walter LaGrand is

Germany had initially sought reparations for itself for the violation of its rights, it dropped that claim during the course of the proceedings and never sought reparations for the violation of the rights of its national. *Id.* ¶¶ 10, 12.

Pursuant to the *LaGrand* decision, the United States instituted measures providing for review and reconsideration in all death penalty cases involving foreign nationals who had not received the notice required by Article 36. *See Avena (Mexico v. United States of America)*, 2003 I.C.J. 128 ¶ 30 (2003). Specifically, the United States permits such review and reconsideration to "occur through the process of executive clemency—an institution 'deeply rooted in the Anglo–American system of justice'—which may be initiated by the individuals concerned after the judicial process has been completed." *Id.* ¶ 44. Contending that this approach is insufficient, Mexico has applied to the ICJ for relief for itself and its nationals on death row in the United States who did not receive the required Article 36 notice. *Id.* ¶ 7. Mexico contends that it and such of its nationals are entitled to *restitutio in integrum*, that is, to the "reestablish[ment of] the situation which would, in all probability, have existed if [the violations] had not been committed." *Id.* Mexico asks that the United States establish a "meaningful remedy at law" for violations of Article 36, including barring the imposition of "any procedural penalty for the failure timely to raise a claim or defense based on the Vienna Convention where competent authorities of the United States have breached their obligation to advise the national of his or her rights under the Convention." *Id.* ¶ 8(3). This matter remains pending,

and the ICJ has issued an Order for Provisional Measures requiring the United States to "take all measures necessary to ensure that [three named Mexican nationals] are not executed pending final judgment in these proceedings." *Id.* Order. Again, Mexico has not sought reparations for itself or for its affected nationals.

Since *Breard*, domestic state and federal courts also have addressed the questions whether Article 36 confers a right enforceable by the individual arrestee and, if so, what is the proper remedy. The issue most often arises in the context of either an ongoing criminal proceeding or action for postconviction relief. In the criminal context, the courts are divided in their conclusions regarding the existence of an individual right, the remedies for its violation, and whether the individual must establish prejudice in order to obtain a remedy. *See, e.g., Valdez v. State of Oklahoma*, 46 P.3d 703, 706–10 (Okla.Crim.App.2002) (citing *F.R.G. v. United States*, 2001 I.C.J. 104 (2001)) (in state post-conviction proceeding, considering *LaGrand*, the court held that *Breard* precluded it from considering a procedurally defaulted Article 36 claim); *United States v. De La Pava*, 268 F.3d 157 (2d Cir.2001) (holding in direct appeal that, assuming foreign national possesses judicially enforceable right under Article 36, trial counsel was not ineffective for failing to move to dismiss the indictment based upon Article 36 violation); *United States v. Emuegbunam*, 268 F.3d 377 (6th Cir.2001) (holding on direct criminal appeal that Article 36 does not create individual rights enforceable in federal court), *cert. denied*, 535 U.S. 977, 122 S.Ct. 1450, 152 L.Ed.2d 392 (2002); *United States v. Jimenez–Nava*, 243 F.3d 192 (5th

---

not executed pending the final decision in these proceedings, and should inform the Court of all the measures which it has taken in implementation of this Order; (b) the Government of the United States of America

should transmit this Order to the Governor of the State of Arizona." 2001 I.C.J. 104 ¶ 32. The parties disputed whether this Order was binding on the United States.

Cir.) (holding on direct appeal that Article 36 does not create individually-enforceable rights and, if it did, suppression of defendant's statements is not appropriate remedy), *cert. denied,* 533 U.S. 962, 121 S.Ct. 2620, 150 L.Ed.2d 773 (2001); *Ledezma v. State of Iowa,* 626 N.W.2d 134, 150–52 (Iowa 2001) (declining to decide Article 36 issue and collecting cases); *United States v. Li,* 206 F.3d 56 (1st Cir.) (even if Article 36 does confer an individual right, remedy does not include suppression of evidence or dismissal of an indictment), *cert. denied,* 531 U.S. 956, 121 S.Ct. 378, 379, 148 L.Ed.2d 292 (2000); *United States v. Lombera–Camorlinga,* 206 F.3d 882 (9th Cir.) (assuming existence of individually enforceable rights under Article 36, exclusion of evidence is not appropriate remedy for violation), *cert. denied,* 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 455 (2000); *United States v. Briscoe,* 69 F.Supp.2d 738, 744–48 (D.Vi.1999) (denying motion to suppress, court held that arrestee possesses individual right under Article 36, but must show prejudice to obtain remedy; in the absence of showing of prejudice, court did not consider nature of appropriate remedy), *aff'd,* 234 F.3d 1266 (3d Cir.2000) (Table).

Two judges of the U.S. District Court for the Southern District of New York have issued opinions addressing the question whether an individual possesses a claim for damages under 42 U.S.C. § 1983 [3] for a violation of Article 36 by a state actor; those two judges also differ in their conclusions. *See Standt v. City of New York,* 153 F.Supp.2d 417, 422–431 (S.D.N.Y.2001) [4] (plain language of Article 36, coupled with implementing regulations and State Department notices to law enforcement officials reminding them of obligations under Article 36, compels conclusion that Article 36 creates a private right enforceable in an action for damages under § 1983; plaintiff need only show "injury," not "prejudice" in the sense that "the outcome of the adversarial proceeding against him would have been different"); *Sorensen v. City of New York,* 2000 WL 1528282, *2–*7 (S.D.N.Y. Oct.16, 2000) (Vienna Convention does not specify damages remedy for its violation, nor does any other signatory impose a civil damages remedy; thus, violation of Article 36 does not give rise to a claim for damages under § 1983).

One court has addressed whether the Alien Tort Claims Act, 28 U.S.C. § 1350,[5]

---

**3.** Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Piecknick v.*

*Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir. 1994). Section 1983 does not provide a cause of action against a federal official. *District of Columbia v. Carter,* 409 U.S. 418, 423–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Bethea v. Reid,* 445 F.2d 1163, 1164 (3d Cir.1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972).

**4.** The District Court for the District of New Hampshire relied upon *Standt* in permitting a § 1983 claim based on an Article 36 violation to proceed past the initial screening stage. *Ulmann v. Anderson,* 2003 WL 168653 (D.N.H. Jan.21, 2003) (Unpubl.).

**5.** "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

provides a remedy for a violation of Article 36 by state actors. *See Jogi v. Piland,* 131 F.Supp.2d 1024 (C.D.Ill.2001). In *Jogi,* at no time during the pendency of state criminal proceedings had the alien defendant been advised of his right to consular notification under Article 36. Rejecting Jogi's claim, the Court stated:

> To satisfy section 1350's jurisdictional threshold, a plaintiff must allege that a "tort" was committed "in violation" of international law or a treaty of the United States. Only those treaty provisions that would actually give rise to a tort action by reason of their violation are implicated by the Alien Tort claims Act. Thus, a plaintiff may bring an action under section 1350 only for a tort committed in violation of a United States treaty, not for any violation of a treaty. *Xuncax v. Gramajo,* 886 F.Supp. 162, 181 (D.Mass.1995).

131 F.Supp.2d at 1026–27. The court further noted that Jogi had failed to allege any damages, a necessary element of any tort claim. *Id.* at 1027. Specifically, the court rejected the notion that mere speculation that the outcome of the criminal case would have been more favorable for him had his consulate been involved constituted an adequate allegation of "damages." *Id.*

## IV. *Analysis*

■ With very limited exceptions, the Federal Employees Liability Reform and Tort Compensation Act ("Liability Reform Act"), 28 U.S.C. § 2679, immunizes federal employees from liability if they commit negligent or wrongful acts or omissions while acting within the scope of their office or employment. This general rule that federal officers are not liable for conduct arising within the scope of their employment "does not extend or apply to a civil action against an employee of the Govern-

ment—(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2). This immunity applies even where federal law does not otherwise provide a remedy against the United States. *See U.S. v. Smith,* 499 U.S. 160, 166, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

Thus, for most such civil actions, the exclusive remedy is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., against the government itself. 28 U.S.C. § 2679(b)(1). The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Deutsch v. United States,* 67 F.3d 1080, 1091 (3d Cir.1995) (quoting 28 U.S.C. § 1346(b)); *see also Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).[6]

Taking these provisions into account, Plaintiff can proceed against the Defendants here only if (1) one of the exceptions to individual immunity contained in § 2679(b)(2) applies or (2) the claim is

---

**6.** Upon certification by the Attorney General that an employee was acting within the scope of employment, the United States is substituted as a defendant. 28 U.S.C. § 2679(d)(1).

otherwise valid against the United States pursuant to the Federal Tort Claims Act.

■ Plainly, the exception under § 2679(b)(2)(A) for claims arising directly under the Constitution does not apply. *Cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). To the extent the Complaint could be construed as asserting a claim for deprivation of Plaintiff's Sixth Amendment right to effective assistance of counsel, a successful claim would "necessarily demonstrate[ ] the invalidity of [a] conviction," and, thus, does not accrue until such time as the conviction is overturned on direct appeal, through the grant of a writ of habeas corpus, or is otherwise invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 486–90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Here, however, Plaintiff has already sought invalidation of his conviction on such Sixth Amendment "ineffective assistance of counsel" grounds and failed. Plaintiff presented this very issue, that his court-appointed counsel was ineffective under the Sixth Amendment, in his prior § 2255 motion attacking his conviction. *See* Docket No. 94–cv–2359 (DRD) (D.N.J.). This issue has been decided against Plaintiff on the merits and that determination has been affirmed on appeal. *See Id.* (Docket Entries Nos. 15, 16, 32, 33, 36) and Docket No. 95–5115 (3d Cir.).

■ That determination is entitled to preclusive effect here. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (traditional notions of collateral estoppel apply to bar claims raised in § 1983 action that were previously decided adversely to the proponent in state criminal proceedings). *See also Pou v. U.S. Drug Enforcement Admin.*, 923 F.Supp. 573 (S.D.N.Y.1996), *aff'd*, 107 F.3d 3, 1997 WL 32954 (2d Cir.1997) (Table). In addition, "if a court is on notice that it

has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised." *United States v. Sioux Nation*, 448 U.S. 371, 432, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (Rehnquist, J., dissenting) (quoted in *Arizona v. California*, 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000)). *See also George v. Martin*, 2001 WL 1568480, *n. 6 (Terr.V.I. Oct. 29, 2001); *Smith v. Rorke*, 1995 WL 455974 (E.D.Pa. July 26, 1995) ("Four elements must be established before issue preclusion will apply: (1) the issue sought to be precluded must be identical to an issue actually litigated in the first action; (2) the issue sought to be precluded must have been actually determined in the first action; (3) the issue sought to be precluded was essential to the first judgment; and (4) the party against whom the issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action."); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir.1983) (aff'g dismissal on frivolousness grounds, under former § 1915(d), of § 1983 claims that previously had been decided adversely to the proponent on direct appeal of his state court criminal conviction and in state post-conviction proceedings). Accordingly, to the extent the Complaint can be construed as attempting to assert a claim directly under the Sixth Amendment, it must be dismissed as frivolous and for failure to state a claim.

■ Nor does the exception under § 2679(b)(2)(B) for "violation of a statute of the United States under which such action against an individual is otherwise authorized" apply in the circumstances of this case. The Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, is, at the very least, a jurisdictional statute. Some courts, including this one, have held that the ATCA also creates a cause of action for the commission of torts in violation of the law of nations or a treaty. *See, e.g.,*

*Abebe–Jira v. Negewo,* 72 F.3d 844, 847 (11th Cir.), *cert. denied,* 519 U.S. 830, 117 S.Ct. 96, 136 L.Ed.2d 51 (1996); *Trajano v. Marcos (In re Estate of Ferdinand E. Marcos Human Rights Litigation),* 978 F.2d 493, 499 (9th Cir.1992), *cert. denied,* 508 U.S. 972, 975, 113 S.Ct. 2960, 125 L.Ed.2d 661 (1993); *Filartiga v. Pena–Irala,* 630 F.2d 876 (2d Cir.1980); *Iwanowa v. Ford Motor Co.,* 67 F.Supp.2d 424 (D.N.J.1999); *Jama v. United States Immigration and Naturalization Service,* 22 F.Supp.2d 353 (D.N.J.1998) (Debevoise, J.) (permitting a claim against officers of the Immigration and Naturalization Service, in their individual capacities, to proceed). *Contra, Alvarez–Machain v. United States,* 266 F.3d 1045, (9th Cir.2001) ("The language of § 1350 creates no obligations or duties." Thus, an action under the ATCA is not exempt from the exclusive remedy provision of the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679); *Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 777 (D.C.Cir.1984) (Edwards, J., concurring), and at 800 (Bork. J., concurring), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). *See generally Al Odah v. United States,* 321 F.3d 1134, 1145 (D.C.Cir.2003) (Randolph, J., concurring).

▌ Assuming that a cause of action under the ATCA is exempt from the exclusive remedy provision of the Liability Re-

form Act,[7] Plaintiff's claim is nevertheless subject to dismissal. The ATCA requires the commission of a tort in order to impose liability.[8] *See, e.g. Kadic v. Karadzic,* 70 F.3d 232, 238 (2d Cir.1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996); *Iwanowa v. Ford Motor Co.,* 67 F.Supp.2d 424, 439 (D.N.J.1999); *Jogi v. Piland,* 131 F.Supp.2d 1024, 1026–27 (C.D.Ill.2001) ("To satisfy section 1350's jurisdictional threshold, a plaintiff must allege that a 'tort' was committed 'in violation' of international law or a treaty of the United States. Only those treaty provisions that would actually give rise to a tort action by reason of their violation are implicated by the Alien Tort Claims Act. Thus, a plaintiff may bring an action under section 1350 only for a tort committed in violation of a United States treaty, not for any violation of a treaty.") (citing *Xuncax v. Gramajo,* 886 F.Supp. 162, 181 (D.Mass. 1995); *Jones v. Petty Ray Geophysical Geosource, Inc.,* 722 F.Supp. 343, 348–49 (S.D.Texas 1989)).

Plaintiff nowhere asserts what "tort" he contends the Defendants committed in violation of Article 36. Nor is this Court aware of any common-law duty imposed on private individuals to advise arrestees of their right of consular notification. In addition, to the extent Plaintiff could assert a theory of negligent breach of a duty to disclose,[9] he cannot state a tort claim in

---

7. Because of the Court's disposition of this matter, it is not necessary to address whether Article 36 of the Vienna Convention is self-executing, or whether it has been implemented by legislation or regulation, so as to give rise to a private cause of action. *See Jama v. U.S. I.N.S.,* 22 F.Supp.2d 353, 362 (D.N.J. 1998). *See also Li v. Canarozzi,* 1997 WL 40979, *5–6 (S.D.N.Y. Feb 3, 1997) ("if a federal statute creates a private right of action against an individual for the conduct of which the plaintiff complains, the fact that the defendant is a federal employee will not bar the claim under [§ 2679(b)(2)(B) ]") (citing *United States v. Smith,* 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991); *Woods v.*

*McGuire,* 954 F.2d 388, 391 (1992); *Allen v. Miller,* 1993 WL 121311 (D.Or. Apr.12, 1993)); 1988 U.S.C.C.A.N. 5945, 5951.

8. It is this requirement that a tort be committed in connection with the violation of a treaty that renders cases evaluating the existence of an Article 36 cause of action under § 1983 of limited import in the ATCA context, as § 1983 contains no comparable requirement.

9. *See, e.g.,* Restatement of Torts (Second) § 282 ("Negligence is conduct which falls below the standard established by law for the protection of others against an unreasonable

the absence of a showing of "causation" and "damages," necessary elements of any tort claim. *See Ramirez v. United States*, 81 F.Supp.2d 532, 540–41 (D.N.J.2000) (the elements of a negligence claim include "(1) duty of care; (2) breach of that duty; (3) proximate cause; and (4) actual damages suffered by the plaintiff"). The damages alleged in this action, denial of Plaintiff's Sixth Amendment right to counsel and the associated potential for a more favorable outcome in Plaintiff's criminal trial, are of the type of speculative damage rejected by the court in *Jogi* and disparaged by the Supreme Court in *Breard*. Moreover, as noted above, this Court has previously determined that Plaintiff was not deprived of his Sixth Amendment right to effective assistance of counsel. Thus, the ATCA claim against the Defendants in their individual capacities must be dismissed.

 Furthermore, with respect to Plaintiff's claims against Defendants in their official capacities, all courts that have addressed the issue agree that the ATCA does not itself waive the sovereign immunity of the United States.[10] *See, e.g., Koohi v. United States*, 976 F.2d 1328, 1332 n. 4 (9th Cir.1992), *cert. denied*, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993); *Goldstar (Panama) v. United States*, 967 F.2d 965, 968 (4th Cir.), *cert. denied*, 506 U.S. 955, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992); *Industria Panificadora, S.A. v. United States*, 957 F.2d 886, 886 (D.C.Cir.), *cert. denied*, 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992); *Rosner v. United States*, 231 F.Supp.2d 1202, 1210 (S.D.Fla.2002); *Jama*, 22 F.Supp.2d at 365. Thus, to the extent Plaintiff seeks to proceed against the Defendants in their official capacities, he must look elsewhere for a waiver of sovereign immunity as to those claims.

 That leaves the Federal Tort Claims Act as Plaintiff's sole remedy with respect to the claims asserted against Defendants in their official capacities. The FTCA, too, requires the commission of a tort to impose liability. *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 969 (4th Cir.1992) ("While the FTCA waives sovereign immunity for actions alleging torts by employees of the Government, it does not create novel causes of action. Thus, the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government."). For the same reasons that Plaintiff's allegations are insufficient to state a claim under the ATCA, they are insufficient to state a claim under the FTCA.

 Also, assuming that an FTCA claim would otherwise be viable, a district court nevertheless lacks jurisdiction over an FTCA claim until the claimant has exhausted administrative remedies. *See McNeil v. United States*, 508 U.S. 106, 113

---

risk of harm."); Restatement of Torts (Second) § 284 ("Negligent conduct may be . . . a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do."); Restatement of Torts (Second) § 286 (which permits a court to adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or administrative regulation "whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that inter-est against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results") (cited in *Carrino v. Novotny*, 78 N.J. 355, 359, 396 A.2d 561 (N.J.1979)).

**10.** The United States has sovereign immunity except where it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). A suit against a government officer in his or her official capacity is a suit against the government. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Deutsch,* 67 F.3d at 1091.

> An action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Moreover, a claim under the FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).[11]

■■■■ Plaintiff's claim accrued when the arresting agents failed to advise him of his rights under Article 36;[12] to the extent Plaintiff seeks to proceed under a "continuing wrong" theory, the claim certainly accrued no later than the date of his conviction, November 23, 1992; accordingly, Plaintiff's claim is untimely. Neither lack of legal knowledge nor attorney error constitute "extraordinary circumstances" required for equitable tolling. *See Williams v. Taylor,* 2002 WL 1459530 (D.Del. July 3, 2002) (rejecting, in habeas proceeding, claim that lack of knowledge about Vienna Convention rights justifies equitable tolling). *Cf. Iwanowa,* 67 F.Supp.2d at 467 (stating in reference to claim brought pursuant to Torture Victims Protection Act, enacted as a note to ATCA, that equitable tolling may be appropriate where defendant has "actively misled" plaintiff, but, to avoid dismissal, a complaint asserting equitable tolling must contain "particularized allegations" that the defendant actively misled the plaintiff).

Here, Plaintiff does not allege that he has exhausted his administrative remedies. Thus, Plaintiff cannot pursue a claim under the FTCA as he has not exhausted his administrative remedies and his claim is now time-barred.

## V. CONCLUSION

For the reasons set forth above, the Complaint must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) as frivolous and for failure to state a claim. Because it

---

11. A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss *sua sponte* under § 1915(e)(2) a *pro se* civil rights claim whose untimeliness is apparent from the face of the Complaint. *See, e.g., Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) *in forma pauperis* provisions, that *sua sponte* dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); *Hall v. Geary County Bd. of County Comm'rs,* 12 Fed.Appx. 855 (10th Cir.2001) (unpub.) (applying *Pino* to current § 1915(e)); *Rounds v. Baker,* 141 F.3d 1170, 1998 WL 172599 (8th Cir.1998)(unpub.) (same); *Johnstone v. United States,* 980 F.Supp. 148 (E.D.Pa.1997) (same).

12. A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action." *Oshiver v. Levin Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 (3d Cir.1994) (quoting *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Fassnacht v. United States,* 1996 WL 41621 (E.D.Pa. Feb.2, 1996) (citing *Oshiver,* 38 F.3d at 1386).

does not appear that Plaintiff could amend his pleading to state a claim, the Court will not grant Plaintiff leave to file an amended complaint. An appropriate order follows.

### ORDER

For the reasons expressed in the Opinion filed herewith,

IT IS on this _____ day of _____, 2003,

ORDERED that the Complaint is DISMISSED WITH PREJUDICE; and it is further

ORDERED that Defendants' Motion to Dismiss is DENIED AS MOOT; and it is further

ORDERED that the Clerk of Court shall enter judgment accordingly and shall close the Court's file.